**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; AND ARTHUR H. BUNTE, JR., as Trustee, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 14 cv 7218 |
| v. | ) ) | Magistrate Judge Susan E. Cox |
| GARY RINKER TRUCKING, INC., | ) ) | |
| Defendant. | ) | |

**<u>Order</u>**

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, Jr., as Trustee, (collectively, the "Pension Fund") sued Gary Rinker Trucking, Inc., for withdrawal liability pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. 1001, *et seq*. This matter comes before the Court on the Pension Fund's motion for summary judgment. For the reasons stated below, the Court grants the Pension Fund's motion and enters judgment for plaintiffs and against defendant.

**I.     Background**

The Pension Fund is a multiemployer pension plan under ERISA, administered by its trustee. Gary Rinker Trucking, Inc. ("Defendant"), an Illinois corporation, was a party to a collective bargaining agreement with a certain local union affiliated with the International Brotherhood of Teamsters ("IBI"), pursuant to which Defendant was required to contribute to that Pension Fund on behalf of certain of its employees. On August 11, 2012, the Pension Fund

1

determined that Defendant permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal" as defined in 29 U.S.C. § 1383. As a result, the Pension Fund determined that Defendant incurred withdrawal liability to the Pension Fund in the principal amount of $803,965.86. On September 19, 2013, Defendant received a Notice and Demand for payment of the withdrawal liability that the Pension Fund issued in accordance with 29 U.S.C. §1401. In this Notice and Demand, the Pension Fund informed Defendant of its withdrawal liability and further stated that Defendant was required to discharge that liability either in a lump sum payment, or in monthly payments of $5,758.91, beginning on October 1, 2013.

On October 18, 2013, Defendant received a notice from the Pension Fund that its withdrawal liability payments were past due. It is undisputed that Defendant has not paid any of the assessed withdrawal liability. However, in October 2013, Defendant attempted to make a payment to the Pension Fund which Defendant claimed was a contribution for covered work that an employee allegedly performed in 2013, not withdrawal liability. The Pension Fund rejected that payment because it had already determined that defendant had withdrawn from the Pension Fund.

In June 2014, after the Pension Fund refused to alter its determination that Defendant had withdrawn from the Pension Fund, Defendant initiated arbitration proceedings seeking to challenge the merits of the withdrawal liability in accordance with 29 U.S.C. § 1401.[1] In that arbitration proceeding, Defendant seeks to show that, although it ceased to perform covered work for a prolonged period, one of its employees resumed covered work under the collective

---

[1] This arbitration is currently pending and is styled *Gary Rinker Trucking, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, AAA No. 01–14–000–6449, American Arbitration Association.

bargaining agreement in 2013. Therefore, there has not been a withdrawal from the Pension Fund, and Defendant does not have any withdrawal liability. It is undisputed that Defendant did not claim this employee had performed covered work until after it had received the Notice and Demand from the Pension Fund on September 18, 2013.

On September 16, 2014, the Pension Fund filed a complaint in federal court to collect the past-due interim withdrawal liability payments. It now seeks summary judgment in its favor on its complaint. In response, Defendant has asserted an affirmative defense, maintaining that it should not be forced to pay withdrawal liability while the arbitration is pending. That defense, which will be discussed further below, requires Defendant to show that the Pension Fund's claim for withdrawal liability is not colorable *and* that making the interim payments will irreparably damage it.

## II. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette Indiana*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking

summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Cellotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. at 322. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 13 48, 89 L. Ed. 2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. The Statutory Scheme Governing Withdrawal Liability

The purpose of ERISA is to make sure that employees and beneficiaries are not deprived of retirement benefits even though pension plans may terminate prior to the accumulation of sufficient funds to pay the anticipated benefits. *Concrete Pipe & Prods. of Cal. Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 607 (1993). To address the debilitating impact of employers withdrawing from multi-employer plans on assets, Congress enacted the MPPAA, 29 U.S.C. §§ 1381-1461. The MPPAA provides that when an employer withdraws from a pension fund, the plan must determine the amount owed by the employer, notify the employer of the amount of withdrawal liability in the schedule of payments, and demand payment from the employer. 29 U.S.C. §§ 1382, 1399(b)(1). The employer may request that the plan review its liability determination. 29 U.S.C. § 1399(b)(2)(B). The statute provides that the plan must respond to the employer's request and provide the basis for its decision. 29 U.S.C. §

1399(b)(2)(B).2  If the employer disputes the plan's determination, it may initiate arbitration. 29 U.S.C. § 1401.  Even if an employer challenges the plan's determination, the statute provides that the employer must make the withdrawal liability payments during arbitration.  29 U.S.C. §§1399 (c)(2) and 1401 (d).  As the Seventh Circuit has described, "ERISA unequivocally establishes a 'pay now, arbitrate later' scheme*." Central States, Southeast and Southwest Areas Pension Fund v. Wintz Properties, Inc.*, 150 F.3d 868, 872 (7th Cir. 1998).  If the arbitrator decides in favor of the employer, the employer has a statutory right to a refund, with interest, of its interim payments.  29 U.S.C. § 1401(d).  If the employer does not pay its interim liability, the plan may file a case in federal court to compel the employer to do so.  29 U.S.C. § 1451.  This is such a case.

The Seventh Circuit has established an extremely limited exception to the statutory directive that interim withdrawal payment must be made by an employer while the employer challenges the liability in arbitration.  Payments may be excused if the employer shows that the plan's claim to payment is frivolous *and* the payments would cause irreparable harm to the employer.  *Central States, Southeast and Southwest Areas Pension Fund v. Bonar National, Inc.*, 253 F.3d 1011, 1016 (7th Cir. 2001); *Trustees of the Chicago Truck Drivers Helpers and Warehouse Workers Union (Independent) Pension Fund v. Rentar Indus. Inc.,* 951 F.2d 152, 154 (7th Cir. 1991).  As the Pension Fund in this case points out, even this narrow exception is not recognized by at least one other federal court of appeals.  *Findlay Truck Line, Inc. v. Central*

---

2 In this case, the Defendant requested such an explanation in January 2012, but the Pension Fund did not respond to this request.  Defendant filed a timely request for arbitration.  Defendant did not raise the Pension Fund's failure to respond to its request as an argument against the entry of summary judgment here, nor does it appear that this would be a persuasive argument.   The Seventh Circuit has held that the failure of a fund to respond to such a request does not toll the employer's time for filing a request for arbitration.  *Robbins v. Chipman Trucking Co.,* 866  F.2d 901-02 (7th Cir. 1988).  Therefore, the Pension Fund's original failure to respond does not impact its right to withdrawal liability in this proceeding.

*States Southeast and Southwest Areas Pension Fund,* 726 F.3d 738, 753 (6th Cir. 2013).

A claim is deemed frivolous if it has "no arguable basis in law or in fact." *Talley v. Lane,* 13 F.3d 1031, 1033 (7th Cir. 1994) (citations omitted). Irreparable harm requires the threat of imminent insolvency. *See Debrecini v. Merchants Terminal Corp.,* 889 F.2d 1, 7 n. 6 (1st Cir. 1989). Thus, to defeat the Pension Fund's motion for summary judgment, Defendant must set forth facts showing there is a genuine issue for trial on the question of whether the Pension Fund's claim is frivolous and, assuming it meets that burden, that it has proven as a matter of law that forcing Defendant to pay the withdrawal liability would cause Defendant to become insolvent. In other words, our job is not to determine whether the Pension Fund has proven that the Defendant actually withdrew from the Pension Fund. That job is left to the arbitrator under the statutory scheme. Our job, as the Seventh Circuit has defined it, is to ensure that the Pension Fund has presented facts which constitute a colorable claim for withdrawal liability. *Trustees of Chicago Truck Drivers*, 935 F.2d at 119. If it has, our mandate is to order that the withdrawal liability be paid pending the outcome of the arbitration proceeding.

### III. Discussion

In this case, Defendant argues that the Pension Fund's claim is frivolous because it has submitted evidence that, although it ceased operations covered by the Pension Fund in 2012, it did not permanently cease covered work. Defendant claims that ten months later (in June 2013), one of its employees resumed work covered by the Pension Fund. Therefore, according to Defendant, the Pension Fund's claim for withdrawal liability is not colorable and it should not be compelled to pay withdrawal liability now.

This argument is unpersuasive. Section 1383 of the statute does not define the term "permanently," but, as the Pension Fund points out, the legislative history makes it clear that the

plan sponsor does not need to be omniscient about whether an employer which ceases covered operations for a protracted period of time will resume such operations in the future. S.Rep. No. 96-1076 at 12-13 (1980) ("A plan sponsor need only make a reasonable determination based on the evidence available that the cessation of covered operations….is not merely temporary"). In this case, Defendant does not dispute that it was not performing covered work at the time that the Pension Fund assessed withdrawal liability. Nor is it disputed that Defendant did not make any contributions to the Pension Fund on behalf of any employee for a period of more than a year. In fact, Defendant did not even attempt to make a payment for the employee who allegedly resumed covered work in June 2013 until October 2013, after it received a Notice and Demand from the Pension Fund demanding payment of the withdrawal liability on September 18, 2013.

The arbitrator may decide that the cessation of covered work was not sufficiently permanent under the statute to warrant withdrawal liability, but we certainly cannot find under these facts that the Pension Fund's claim is frivolous. In fact, a plausible construction of the evidence before this Court points to the opposite conclusion: that Defendant had indeed permanently ceased all covered operations and only claimed covered work for one employee after it was assessed for withdrawal liability. But that is a matter to be sorted out by the arbitrator. Defendant has failed to demonstrate that there is a triable issue of fact on the question of whether the Pension Fund's claim is frivolous. Because we do not find that Defendant has shown that the Pension Fund's claim for withdrawal liability is frivolous, we do not need to reach the question of whether Defendant has proven that paying the assesses liability would render it insolvent.

In addition to the principal amount of its withdrawal liability assessment, the Pension Fund is entitled to recover interest on the missed interim withdrawal liability payment, liquidated

damages, and attorneys' fees and costs pursuant to Section 502 (g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). In collection actions, delinquent withdrawal liability payments are treated as delinquent employer contributions and are enforced under Title I of ERISA, 29 U.S.C. § 1451(b). The damages awarded under 29 U.S.C. § 1132(g)(2), made applicable to cases involving withdrawal liability pursuant to 29 U.S.C. 1451(b), are mandatory. *Central States, Southeast and Southwest Areas Pension Fund v. Slotky,* 956 F.2d 1369, 1377 (7th Cir. 1992). The liquidated damages awarded under MPPAA "are something that an employer must pay as a penalty for refusing to follow the statutory procedures for challenging assessments of withdrawal liability." *Central States, Southeast and Southwest Areas Pension Fund v. Lady Baltimore Foods,* 960 F.2d 1339, 1347 (7th Cir. 1992). We therefore award the Pension Fund the unpaid contributions, interest thereon, fees, costs, and the greater of an amount equal to the interwar or liquidated damages in the amount of twenty percent of the unpaid amounts. 29 U.S.C. § 1132(g)(2).

## Conclusion

For the foregoing reasons, the Court grants the Pension Fund's motion for summary judgment. The Pension Fund should submit a Judgment Order within seven days of this Order.

Date: 8/14/2015　　　　　　　　　　　　Magistrate Judge Susan E. Cox